# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# BEAUFORT DIVISION

| | |
|---|---|
| EDWARD I. SMITH<br><br>    Plaintiff,<br><br>v.<br><br>TELEDYNE CONTINENTAL<br>MOTORS, INC.<br><br>    Consolidated With<br><br>JENNIFER D. JONES, individually<br>and as Administrator of the Estate of<br>Robert Gary Jones, deceased,<br><br>    Plaintiff,<br><br>v.<br><br>TELEDYNE CONTINENTAL<br>MOTORS, INC., et al.<br><br>    Defendants. | ) Civil Action No.<br>) 9:10-CV-2152-SB-WOB<br>)<br>) Consolidated with:<br>)<br>)<br>) Civil Action No.<br>) 9:10-CV-2546-SB-WOB<br>)<br>) **PLAINTIFF'S REPLY IN**<br>) **SUPPORT OF HER**<br>) **MOTION IN LIMINE TO**<br>) **EXCLUDE ANY NTSB**<br>) **REPORTS, INCLUDING**<br>) **NEWLY CREATED**<br>) **SUPPLEMENTAL**<br>) **REPORT, AND ALL**<br>) **DOCUMENTS**<br>) **ASSOCIATED**<br>) **THEREWITH;**<br>) **ADDITIONAL EXHIBITS**<br>)<br>)<br>)<br>) |

**TABLE OF CONTENTS**

I.      INTRODUCTION .................................................................. 1

II.     THE NTSB MATERIALS AT ISSUE ........................................ 2

III.    CMI'S CHARACTERIZATION OF THE RESPONSE AND OTHER NTSB MATERIALS AS CONSTITUTING ADMISSIBLE "FACTUAL FINDINGS" LACKS MERIT ............................................................................... 3

        A.    The legal standard ...................................................... 3

        B.    The Original Report and the Supplemental Report (Docs. 1-2) fall squarely within the prohibition on admissibility ............................ 6

        C.    The Response (Doc. 3), even in the redacted form proposed by CMI, contains numerous conclusions and opinions incompatible with court interpretation of 49 U.S.C. § 1154(b) ................................................. 7

              1.    *The contents of the Response* ................................. 7

              2.    *CMI's limited redactions to the Response leave numerous inadmissible conclusions of the NTSB regarding causation* .................. 8

        D.    With the Response being inadmissible, introducing the Petition (Doc. 4) would only confuse the issues and waste time, and therefore it is excludable on that basis ........................................................ 9

        E.    The "Factual Report – Aviation", "Materials Laboratory Analysis Report" No. 10-071A, and "Preliminary Report – Aviation" (Docs. 5-7) should be excluded due to inclusion therein of NTSB opinions and conclusions, despite their label as "factual"
              ............................................................................ 11

        F.    CMI's argument that the NTSB Materials are admissible based on certain federal regulations is borderline frivolous ................................. 12

III.    CMI'S "FUNDAMENTAL FAIRNESS" ARGUMENT CANNOT APPLY, BECAUSE PLAINTIFF EXPRESSLY DISCLAIMS ANY INTENTION TO   ARGUE AT TRIAL THAT CMI IMPROPERLY WITHHELD EVIDENCE       FROM THE NTSB ... 14

        A.    Plaintiff does not intend to argue at trial that CMI withheld document CMI9067 from the initial NTSB investigation ................................ 14
        B.    There is no merit to CMI's accusation that Plaintiff's attorneys are presenting positions they "know" to be untrue ................................ 15

IV.     CMI FAILS TO REFUTE THAT THE NTSB'S  FINDING OF A DOCUMENTED PROPELLER STRIKE LACKS FOUNDATION ................................ 16

V.      CMI FAILS TO REFUTE THAT ADMITTING THE NTSB'S OPINIONS ON CAUSATION WOULD SEVERELY PREJUDICE PLAINTIFF ............... 18

VI.     CONCLUSION ................................................................... 19

i

# TABLE OF AUTHORITIES

Cases

*Accord Protectus Alpha Nav. Co. v. North Pacific Grain Growers, Inc.*,
    767 F.2d 1379 (9th Cir. 1985) .................................................. 5

*Berguido v. Eastern Air Lines, Inc.*,
    317 F.2d 628 (3d Cir. 1963) .................................................... 5

*Everest Capital, Ltd. v. Everest Funds Mgt., L.L.C.*,
    393 F.3d 755 (8th Cir. 2005) ................................................... 10

*Fidelity & Casualty Co. v. Frank*,
    227 F. Supp. 948 (D. Conn. 1964) ............................................. 5, 9

*In re Air Crash at Charlotte*,
    982 F. Supp. 1071 (D.S.C. 1996) ............................................... 4

*In re Air Crash at Charlotte*,
    982 F. Supp. at 1076 ........................................................... 9

*In re Petition of Cleveland Tankers*,
    821 F. Supp. 463, (E.D. Mich. 1992) .......................................... 3

*Jet Air v. Epps Air Serv.*,
    392 S.E.2d 245 (Ga. Ct. App. 1990) ........................................... 4

*New York v. Pullman, Inc.*,
    662 F.2d 910 (2d Cir. 1981) ................................................... 10, 11

*Steorts v. American Airlines, Inc.*,
    647 F.2d 194 (D.C. Cir. 1981) ................................................. 4

*Thomas Brooks Chartered v. Burnett*,
    920 F.2d 634 (10th Cir. 1990) ................................................. 13

*United States v. Gilbert*,
    229 F.3d 15 (1st Cir. 2000) ................................................... 10

*United States v. Hill*,
    322 F.3d 301 (4th Cir. 2003) .................................................. 10

*Universal Airline, Inc. v. Eastern Air Lines, Inc.*,
    188 F.2d 993 (D.C. Cir. 1951) ................................................. 4

*Van Houten-Maynard v. ANR Pipeline Co.*,
    1995 U.S. Dist. LEXIS 6978, at *11-*12 & n.1 (N.D. Ill. May 19, 1995) ......... 6

*Van Steemburg v. Gen. Aviation, Inc.*,
    611 N.E.2d 1144 (Ill. Ct. App. 1993) ......................................... 5

Statutes

45 U.S.C. § 1254(b) .................................................... 12

49 C.F.R. § 845.40 ..................................................... 12

49 C.F.R. § 835.2 ....................................................... 6

49 C.F.R. § 835.3(e) ................................................ 13, 18

49 C.F.R. § 845.1 ...................................................... 13

49 C.F.R. § 845.41 ..................................................... 12

49 C.F.R. § 845.50 ..................................................... 13

49 U.S.C. § 1441 ....................................................... 13

49 U.S.C. § 1154(b) ................................... 3, 6, 9, 12, 13, 19

F.R.C.P. Rules 26 and 37 ............................................... 18

Federal Rule of Evidence 403 ........................................... 18

I.  **INTRODUCTION**

Plaintiff Jennifer D. Jones moved to exclude all reports of the National Transportation Safety Board ("NTSB") regarding the subject aircraft crash. Those included a Report dated August 8, 2013 (the "Supplemental Report") and its associated "Response to Petition for Reconsideration" dated August 12, 2013 (the "Response"), both of which concluded that the probable cause of the propeller crankshaft fracture leading to the crash was a documented propeller strike. The Supplemental Report and the Response amended the NTSB's original probable cause report dated June 27, 2011 (the "Original Report"), which had opined that the crankshaft resulted from an "undocumented" propeller strike.

As Mrs. Jones explained in her opening papers, (1) NTSB probable cause reports are inadmissible under federal statute and applicable case law; (2) the NTSB's amended conclusion of a "known" propeller strike lacks factual foundation; and (3) admitting the foregoing documents would unduly prejudice Mrs. Jones, as it would be tantamount to letting a "super" expert witness (the NTSB) testify without any ability by Plaintiff to cross-examine and challenge.

As elaborated below, the arguments made in CMI's opposition to the Motion lack any merit. Among other things, the opposition is premised on Mrs. Jones arguing or referring at trial to CMI's withholding of documents from the NTSB's investigation of the accident -- *an argument that Plaintiff hereby expressly disclaims and shall not make at trial*. Accordingly, Plaintiff respectfully requests that the Court decline to credit CMI's Opposition and grant her Motion in its entirety.

II. **THE NTSB MATERIALS AT ISSUE**

To assist the Court in determining this Motion, it should be made clear what NTSB documents are or are not at issue. In her opening papers, Plaintiff specifically addressed the Original Report, the Supplemental Report, the Response, and what Plaintiff referred to as all "associated documents," by which Plaintiff meant all other documents addressing what caused or did not cause the crankshaft fracture that led to the subject air crash. Plaintiff used the phrase "associated documents" because other than the Original Report, the Supplemental Report, and the

1

Response, she was not certain what objectionable NTSB documents CMI would seek to introduce at trial.

Based on CMI's Opposition, Plaintiff can and does clarify that her Motion in Limine addresses all of following specific documents:

(1) Original Report adopted June 27, 2011 (Plt. Ex. C / CMI Ex. H);

(2) Supplemental Report issued August 8, 2013 (Plt. Ex. A / CMI Ex. K);

(3) Response to Petition for Consideration dated August 12, 2013 (Plt. Ex/ B / CMI Ex. J);

(4) Plaintiff's Petition for Reconsideration on the Grounds of Newly Discovered Evidence, dated September 6, 2012 (the "Petition") (CMI Ex. I);

(5) "Factual Report – Aviation" updated June 27, 2011 (CMI Ex. D);

(6) "Materials Laboratory Analysis Report" no. 10-07A dated July 15, 2010 (CMI Ex. F); and

(7) "Preliminary Report – Aviation" updated March 27, 2010 (CMI Ex. C) (together, the "NTSB Materials").

### III. CMI'S CHARACTERIZATION OF THE RESPONSE AND OTHER NTSB MATERIALS AS CONSTITUTING ADMISSIBLE "FACTUAL FINDINGS" LACKS MERIT

The crux of CMI's first argument appears to be that the Response (or at least 90 percent of it) and certain other of the above NTSB Materials should be admitted because they allegedly constitute "factual findings" falling outside the prohibition of admissibility in 49 U.S.C. §1154(b). CMI is wrong, particularly as to the Response, in its entirety as well as in redacted form (Exs. N-O).[1]

#### A. The legal standard

---

[1] CMI claims several times that the instant Motion is "untimely." Opp. at 2, 14. Plaintiff did file this Motion after the original deadline of July 19, 2013, 2013, for motions in limine, but only because Plaintiff's attorneys did not find out about the Supplemental Report and Response until the week of August 26, 2013. Those documents are dated August 8 and August 12, 2003, respectively, and the NTSB case docket shows they were not filed until August 14, 2013. CMI Ex. G.

49 U.S.C. § 1154(b) states, "No part of a report of the Board [the NTSB], related to an accident or an investigation of an accident, may be admitted into evidence or used in a civil action for damages resulting from a matter mentioned in the report."

Some courts have held that "factual" findings of the NTSB do not fall within the foregoing statutory bar against admissibility. *In re Petition of Cleveland Tankers*, 821 F. Supp. 463, 463 n.2 (E.D. Mich. 1992) ("Although strict application of the statute has been somewhat modified in recent cases ... so as to permit some reports of staff investigators and other personnel into evidence, *such reports, to the extent they express agency views or conclusions as to the probable cause of the accident, are excludable under the rule*.") (ellipsis & italics in orig.). However, as shown by the authorities below, this distinction between what is "factual" versus a "conclusion" depends not on the label given, but the substance of the document or part of the document at issue.

As this District Court has held, courts "must apply the statute [49 U.S.C. 1154(b)] ... to prevent the use in evidence of those portions of investigative group or subcommittee reports which, *as a practical matter, would, in effect, tell the trier how the case should be decided*." *In re Air Crash at Charlotte*, 982 F. Supp. 1071, 1076 (D.S.C. 1996) (emphasis added). Such evidence includes "any testimony reflecting *directly or indirectly* the ultimate views or findings of the agency or board[,] [which] are generally held inadmissible because they would tend to usurp the function of the jury." *Universal Airline, Inc. v. Eastern Air Lines, Inc.*, 188 F.2d 993, 1000 (D.C. Cir. 1951), *superseded on diff. grounds*, *Steorts v. American Airlines, Inc.*, 647 F.2d 194 (D.C. Cir. 1981).

Thus, *in Jet Air v. Epps Air Serv.*, 392 S.E.2d 245 (Ga. Ct. App. 1990), plaintiffs had attempted to introduce the contents of an NTSB report, particularly an entry stating "None" after the heading "Part Failure / Malfunction." On appeal, the court concluded that trial court was correct to exclude that document, because the content at issue, whatever its label, purported to state an opinion of the NTSB regarding what caused the air crash: "Whether the incident was caused by mechanical malfunction was one of the issues presented to the jury. We agree with the trial court that, *despite the fact that the page in question was entitled 'Factual Report,' the notation*

3

*concerning the mechanical malfunction reflected an opinion or conclusion of the [NTSB] person who prepared the report and thus the page was inadmissible* without qualifying the preparer as an expert." *Id.* at 248-49 (emphasis added).

Similarly, in *Fidelity & Casualty Co. v. Frank*, 227 F. Supp. 948 (D. Conn. 1964), the issue was the admissibility of some portions of an NTSB document entitled "Operations Group Chairman's Factual Report of Investigation." Notwithstanding the "factual" label affixed by the NTSB, the court excluded the following statements from such document as being inadmissible "evaluation, opinion or conclusion evidence":

> [T]he flight was handled in a normal manner and that progress was satisfactory and in accordance with standard accepted practices from taxi-take-off....
>
> [A]ll crew members ... were currently certificated and qualified....
>
> [T]he aircraft had broken up in the air and had fallen to the ground in several large pieces. The forward section of the fuselage had broken free of the remaining portion of the fuselage ... and fell to the ground right-side up with little forward motion.
>
> [T]he clock had stopped on impact and offers the most reliable time for ... the accident...

*Id.* at 949-50. *Accord Protectus Alpha Nav. Co. v. North Pacific Grain Growers, Inc.*, 767 F.2d 1379, 1385 (9th Cir. 1985) ("[R]eports of staff investigators and other personnel into evidence ... to the extent they express agency views or conclusions as to the probable cause of the accident, are excludable under the rule."). And, since the "primary thrust of [49 U.S.C. 1154(b)] ... is to exclude [NTSB] reports which express ... the probable cause of the accident[,] [o]f necessity, the opinion testimony of the [NTSB's] investigators would also come within this rule." *Berguido v. Eastern Air Lines, Inc.*, 317 F.2d 628, 632 (3d Cir. 1963).

Parties also cannot get around the prohibition on conclusions / opinions by introducing them through counsel's questions, an expert, or other witnesses. In *Van Steemburg v. Gen. Aviation, Inc.*, 611 N.E.2d 1144 (Ill. Ct. App. 1993), the conclusions of plaintiffs' experts on causation were challenged by defendant's attorneys asking whether they were aware that NTSB investigators had found no evidence of pre-impact power loss (plaintiffs' theory of causation), and that NTSB investigators had noted only one emergency condition with respect to the aircraft (a

4

condition inconsistent with plaintiffs' theory). On appeal, the court held that the references to NTSB materials through such questioning amounted to introducing the causal opinions of NTSB investigators, and therefore should have been excluded. *Id.* at 314-17; *see also Van Houten-Maynard v. ANR Pipeline Co.*, 1995 U.S. Dist. LEXIS 6978, at *11-*12 & n.1 (N.D. Ill. May 19, 1995) ("defendant's expert cannot rely on the NTSB report as a basis for his opinion.").

With the above principles, the Court can evaluate separately each of the NTSB Materials.

**B.      The Original Report and the Supplemental Report (Docs. 1-2) fall squarely within the prohibition on admissibility**

CMI does not appear to claim, nor could it reasonably claim, that documents 1 and 2 above, the Original Report and the Supplemental Report, are not "probable cause" reports expressly subject to the bar on inadmissibility set forth in 49 U.S.C. § 1154(b).

On their face, and even under CMI's asserted narrow definition of what is inadmissible, the Original Report and Supplemental Report are "report[s] containing the Board's determinations, including the probable cause of an accident, issued as a narrative report or in a computer formal ('brief' of accidents) ... *no part [of which] may be admitted as evidence* or used in any suit or action for damages growing out of any matter mentioned in the report[s]." 49 C.F.R. § 835.2) (emphasis added). On the front page of each document is the title "Brief of the Accident"; also, the last page of each document states, "The National Safety Transportation Board determines the probable cause(s) of this accident as follows...." Plt. Exs. A & C.

**C.      The Response (Doc. 3), even in the redacted form proposed by CMI, contains numerous conclusions and opinions incompatible with court interpretation of 49 U.S.C. § 1154(b)**

   **1.      *The contents of the Response***

The focus of CMI's "fact versus opinion" argument is on the NTSB's Response to the Petition for Reconsideration (the "Response"). Mot. at 10-16. Given the significance of the Response, a detailed summary of its contents is as follows.

- There was "fatigue cracking on the fracture face of the crankshaft," and the location of such "is consistent with forces produced by external impacts, such as

5

- a propeller strike."
- In June 2011, the NTSB adopted its original conclusion: The probable cause of the accident was a "loss of engine power due to the failure of the crankshaft as a result of a previously undocumented propeller strike."
- In September 2012, Plaintiff's attorneys submitted a Petition for Reconsideration (the "Petition").
- The NTSB credited CMI's response to the Petition that an engine test failure in 1996 was "not catastrophic but a routine replacement of a burnt cylinder during the production testing," and disagreed with Plaintiff's contention that it was sufficiently catastrophic to damage the crankshaft.
- From statements made by pilot Edward Smith in a December 8, 2008 email, "a more severe propeller strike occurred consistent with the initiation and growth of the fatigue cracks found in the crankshaft flange, further supporting the NTSB's original probable cause."
- From statements made by pilot Edward Smith in a December 8, 2008 email, "a more severe propeller strike occurred consistent with the initiation and growth of the fatigue cracks found in the crankshaft flange, further supporting the NTSB's original probable cause."
- The documentary evidence of the 1996 engine test failure withheld by CMI was immaterial. On the contrary, the Smith December 2008 email "clearly indicates that a propeller strike did occur before the accident...."
- The NTSB amended its probable cause conclusion from "a previously undocumented propeller strike" to "a [documented] previous propeller strike."

The Response was signed by NTSB Chairman Hersman and four other board members.

    2. <u>*CMI's limited redactions to the Response leave numerous inadmissible conclusions of the NTSB regarding causation*</u>

CMI incorrectly contends that with its redactions, the Response would be admissible as a

6

"factual accident report of the NTSB." Opp. at 12-13; see Ex. N (CMI redacted version) & Ex. O (version with CMI redactions shown as strike-throughs, not complete black-out).

CMI eliminated the phrase "probable cause" from the Response, including where the NTSB restated its original probable cause determination and then renders a new probable cause opinion. Significantly, however, CMI left untouched the following conclusions, among others: (a) "the location of the fatigue cracking is consistent with forces produced by external impacts, such as a propeller strike…"; (c) the 1996 engine test failure was "not catastrophic but a routine replacement of a burnt cylinder during the production testing"; and (c) Smith's December 2008 email "clearly indicates that a propeller strike did occur before the accident."

A central dispute this action is mechanical causation; namely, what caused or did not cause the propeller crankshaft to fracture in mid-flight. Therefore, admission of the Response with even the redactions made by CMI would lead precisely to what this District Court has warned of: a result which, "as a practical matter, would, in effect, tell the trier how the case should be decided." *In re Air Crash at Charlotte*, 982 F. Supp. at 1076. And, as held in *Fidelity & Casualty*, an inadmissible opinion / conclusion of the NTSB does not have to be the ultimate or overarching opinion of probable cause; it can be opinions / determinations made along the way that may lead or give rise to the final probable cause determination. 227 F. Supp. at 949-50.

Here, admitting the Response even with the redactions would be equivalent of the NTSB testifying from the witness stand, "Plaintiff's theory of causation is wrong; a different theory of causation is right; and Edward Smith's credibility is suspect, since he refused to 'acknowledge' that a previous propeller strike occurred." CMI argues that only the incantation of the magic phrase "probable cause" would trigger the statutory prohibition against admissibility in 49 U.S. § 1554(b). But as shown in the portions of the Response that CMI seeks to introduce, no use of that phrase is required to have the jury infer what the NTSB's probable cause determination is -- and potentially make such NTSB opinions the deciding factor in their findings.

> **D.    With the Response being inadmissible, introducing the Petition (Doc. 4) would only confuse the issues and waste time, and therefore it is excludable on that basis**

7

With the Court's finding that the Response is inadmissible, it would make sense to also exclude the Petition that gave rise to (Doc. 4, CMI Ex. I) to avoid confusing the jury and wasting trial time.

"The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time...." F.R.E. 403. Among the circumstances considered confusing is where the jury must consider a "case within a case." *United States v. Hill*, 322 F.3d 301, 306 (4th Cir. 2003); *United States v. Gilbert*, 229 F.3d 15, 24 (1st Cir. 2000) (previous incident excluded since it required "mini-trial").

Significantly, where evidence of action by a governmental agency could be misunderstood by the jury as the government's official position on a critical issue in the case, it warrants exclusion due to confusion of issues and undue prejudice. *Everest Capital, Ltd. v. Everest Funds Mgt., L.L.C.*, 393 F.3d 755, 764 (8th Cir. 2005) (evidence of U.S. Patent and Trademark Office's notice and tentative opinion regarding likelihood of confusion between plaintiff's trademark and defendants' trademark was properly excluded as unfairly prejudicial, because it addressed critical issue in case; namely, whether there was in fact substantial likelihood of confusion between two trademarks).

If the Petition were admitted despite exclusion of the Response, the jury will likely wonder (and speculate on) how the NTSB responded to the Petition, and the focus of the trial may turn from what actually caused the crankshaft break into what happened or did not happen in the NTSB proceedings. Such evidence of a collateral proceeding would complicate the case and confuse the issues, thereby requiring exclusion. *New York v. Pullman, Inc.*, 662 F.2d 910, 915 (2d Cir. 1981) ("the admission of [a governmental agency] report would have been likely to protract an already prolonged trial with an inquiry into collateral issues regarding the accuracy of the report and the methods used in its compilation"). Moreover, the jury may incorrectly conclude that because the NTSB, an ostensibly disinterested government agency, came to certain opinions or conclusions, it should do the same. *Id* (cautioning against "government reports which ... [have] an aura of

special reliability"); *see also* Sec. V.

This is a litigation between Plaintiff and CMI regarding whether its products were defective and caused the death of Plaintiff's decedent, and a trial-within-a-trial of any related NTSB proceedings will inevitably distract from this case and confuse the issues.

E.  **The "Factual Report – Aviation", "Materials Laboratory Analysis Report" No. 10-071A, and "Preliminary Report – Aviation" (Docs. 5-7) should be excluded due to inclusion therein of NTSB opinions and conclusions, despite their label as "factual"**

The NTSB's Factual Report – Aviation" (Doc. 5, CMI Ex. D), the "Materials Laboratory Analysis Report" number 10-071A (Doc. 6, CMI Ex. F), and "Preliminary Report – Aviation" should be excluded as well. Just like the Response, and notwithstanding their innocuous titles, they contain inadmissible opinions of the NTSB regarding and relating to causation of the crankshaft fracture.

Page 1a of the "Factual Report – Aviation" contains the following conclusionary statements regarding causation:

> [T]he aft relief radius for the propeller flange contained no evidence of mechanical damage ... The fatigue crack propagated through the full thickness of the wall of the crankshaft, and extended around approximately 50 percent of the crankshaft circumference. (¶ 3).
>
> A review of the engine logbooks ... did not reveal any anomalies that would have been contributing to the fatigue crack... A review of the propeller and aircraft logbook entries also did not reveal any anomalies that would have contributed to the fatigue crack. (¶ 4).

The "Materials Laboratory Analysis Report" number 10-071A (marked "Official Use Only") contained similar conclusions regarding the supposed "propeller strike":

> [M]ultiple origin fatigue cracks that extend nearly 50 percent around the circumference of the aft relief radius for the propeller flange *suggests that a propeller had struck an object* prior to fracture of the crankshaft. Such a strike can exert torsion or bending stress in the radius of the propeller flange that can lead to fatigue cracking. In the absence of material anomalies, *fatigue cracking appears likely to have been caused by external impact stress, such as [a] propeller strike*. (emphasis added).

Finally, the "Preliminary Investigation – Aviation" (Doc. 7, CMI Ex. C) contained the following statements that implicit an opinion that Ed Smith's actions contributed to the subject

9

crash:

>[A]n experimental amateur-built Smith Lancair IV-P ... lost engine power.

>[T]he airplane made a series of unusual turns.

Regardless of their labels, the "Factual Report – Aviation," the "Materials Laboratory Analysis Report" number 10-071A, and the "Preliminary Report – Aviation," or at least the referenced portions above, should be excluded as NTSB opinions / conclusions as to probable cause inadmissible under 45 U.S.C. § 1254(b).

### F. CMI's argument that the NTSB Materials are admissible based on certain federal regulations is borderline frivolous

According to CMI, the Response is not covered by the statutory bar of admissibility in 49 U.S.C. § 1154(b) because it "was created and issued by the NTSB pursuant to the federal statute governing petitions for reconsideration or modification (49 C.F.R. § 845.41), which is separate and distinct from the federal statute governing accident reports issued by the NTSB (49 C.F.R. 845.40)." Opp. at 12. Aside than the fact that the Code of Federal Regulations is not a "statute," examination of the cited sections shows they are both from the same "Part" of the C.F.R. entitled""RULES OF PRACTICE IN TRANSPORTATION; ACCIDENT/ INCIDENT HEARINGS AND REPORTS."  That "Part" goes from 49 C.F.R. § 845.1 (entitled "Applicability") through 49 C.F.R. § 845.51 (entitled "Investigation to Remain Open"). Moreover, all of the foregoing regulations implement a common statute, Title VII, Federal Aviation Act of 1958, as amended (codified at 49 U.S.C. § 1441, *et seq.*).

CMI's second argument is based on 49 C.F.R. § 845.50, which states, "The public docket shall include all factual information concerning the accident..." It claims that because such provision refers to "factual information," everything listed on the public docket must be "factual," including the Response and the Petition that gave rise to it. This is a flawed syllogism that because all factual information must be listed on the docket, that means everything listed on the docket is factual. But even assuming those documents are "factual reports," 49 C.F.R. § 835.3(e) expressly states, "Not all material in a factual accident report may be the subject of testimony. The purpose

10

of the factual accident report, in great part, is to inform the public at large, and as a result the factual accident report may contain information and conclusions for which testimony is prohibited."

Moreover, the purpose of 49 C.F.R. § 845.50 is to ensure that "the work-product of the NTSB is ultimately public and available to anyone." *Thomas Brooks Chartered v. Burnett*, 920 F.2d 634, 638 (10th Cir. 1990). This requirement for public disclosure says nothing about whether some contents are "factual" or "opinions" for purposes of admissibility under 49 U.S.C. § 1154(b). Tellingly, both the "Original Brief Report" [aka Original Report] and "Revised Brief Report" (aka Supplemental Report) are listed on the public docket, as entries numbers 20 and 21. CMI Ex. G. These are undisputedly covered by 49 U.S.C. § 1154(b) as being "report[s] containing the Board's determinations, including the probable cause of an accident, issued as a narrative report or in a … 'brief' of accidents)…."

### III. CMI'S "FUNDAMENTAL FAIRNESS" ARGUMENT CANNOT APPLY, BECAUSE PLAINTIFF EXPRESSLY DISCLAIMS ANY INTENTION TO ARGUE AT TRIAL THAT CMI IMPROPERLY WITHHELD EVIDENCE FROM THE NTSB

CMI's second major argument is that if Plaintiff argues at trial that CMI withheld key evidence from the NSTB during its initial investigation of the subject air crash, the "fundamental fairness" exception to statutory inadmissibility would require the admission of the Response and the Supplemental Report. As Plaintiff hereby expressly disclaims any intent to argue or make any reference at trial to such conduct by CMI, this asserted reason for admitting the Response and the Supplemental Report no longer exists.

#### A. Plaintiff does not intend to argue at trial that CMI withheld document CMI9067 from the initial NTSB investigation

CMI accuses Plaintiff of bad faith, claiming, "Because it is so damaging to her case, Plaintiff now wants to exclude all evidence related to the NTSB's Response to her Petition or [the NTSB's] Probable Cause Reports (which is a complete reversal of her previous position)." Opp. at 14. There is no such "reversal of position." In document 469 on the case docket cited by CMI, Plaintiff opposed CMI's attempt to exclude some NTSB opinions but not others; the instant

11

Motion seeking all exclusion is consistent with that. Moreover, unlike what CMI seeks to do now, Plaintiff was not going to use any probable cause finding by the NTSB as, in effect, res judicata or collateral estoppel. Rather, Plaintiff's argument would have been that CMI's withholding of document CMI9067 evidences CMI's consciousness of guilt and its tacit admission that the engine failure memorialized in that document did in fact cause the subsequent crankshaft failure.

In any event, Plaintiff hereby expressly disclaims any reference or argument at trial regarding CMI's failure to provide documents during the NTSB's investigation. Accordingly, there is no need for CMI to counter-argue, for example, that the NTSB agreed with CMI and disagreed with Plaintiff regarding the interpretation or significance of document CMI9067.

### B.  There is no merit to CMI's accusation that Plaintiff's attorneys are presenting positions they "know" to be untrue

Plaintiff's disclaimer of any argument regarding "evidence withholding" moots all of this, but a response is required to CMI's accusation that Plaintiff's attorneys are "advancing arguments they now know to be untrue...." Opp. at 16-17.

The NTSB denied the Petition, so of course Plaintiff's attorneys do not intend to "insinuat[e] in any way that the NTSB agrees with Plaintiff." But Plaintiff's attorneys do *not* "know" that CMI fully complied with its obligations to produce all evidence to the NTSB during its initial investigation of the subject air crash. The NTSB disagreed that document CMI9067 (p. 21 of 46 of CMI Ex. I) shows what Plaintiff contends it shows, but that does not necessarily mean that CMI's undisputed failure to produce that document was proper.

To make clear, just because the NTSB came to certain conclusions, that does not make such conclusions established "facts." While Plaintiff will not argue that the NTSB agrees that CMI9067 shows a catastrophic engine failure, Plaintiff can certainly argue, based on percipient and expert evidence, that CMI9067 actually does show a catastrophic engine failure.

### IV.  CMI FAILS TO REFUTE THAT THE NTSB'S FINDING OF A DOCUMENTED PROPELLER STRIKE LACKS FOUNDATION

In her opening papers, Plaintiff showed that the NTSB's probable cause opinion of a (documented) propeller strike, and the Supplemental Report and the Response in which such

12

conclusion was contained, should be excluded due to their unreliability. As Plaintiff explained, the NTSB's revised determination relied solely on its interpretation of a December 8, 2008, email sent by plane owner Edward Smith, and failed to consider the actual facts surrounding the propeller contact discussed in that email; namely, (a) Smith's subsequent repair of the minor damage to the propeller; (2) the correctness of his repair consistent with the guidelines of CMI, propeller manufacturer Hartzell, and the FAA; (3) the lack of any "propeller strike" as specifically defined by CMI; and (4) photographs of the propeller blade showing the small area of cosmetic damage, and the small size of the pebbles at the airport where that incident occurred. Mot. at 15-27.

CMI's Opposition does not address, much less refute, *any* of the foregoing factual showing. Rather, CMI spends more than two pages describing the procedures of an NTSB investigation, which are not relevant. Opp. at 18-20.

CMI argues that "There is no basis for Plaintiff's contention that the Amended Probable Cause Report [aka Supplemental Report] is grounded 'solely' on Smith's December 8, 2008 email." Opp. at 20. CMI points to a statement in the Response that the new probable cause finding was based on a "review of the original case material and subsequent reexamination." But if the previous probable cause opinion was based on "X" (the NTSB's previous work) and the new probable cause opinion was based on "X" + "Y" (the Dec. 2008 email), the only possible inference is that the change in conclusion is due solely to "Y" (Smith's email).

CMI takes umbrage at Plaintiff's questioning whether the reliability of the NTSB's conclusions may be affected by the parties' unequal interaction with the NTSB. Opp. at 20-22. It argues that federal regulations allow CMI, as a party to the accident, to participate in the NTSB's investigation; the NTSB is in charge of the investigation; and that if CMI had "thwarted directions from the NTSB or behaved in a manner that could have compromised the investigation, [CMI] would have ... been barred from further access or participation in the investigation." Opp. at 21. The third point is based on a flawed assumption amounting to the proposition that no bank robberies take place because there are laws prohibiting bank robbery. As to the first two points,

13

they are non-sequiturs. NTSB'S supervision of the investigation says nothing about whether its investigation or conclusions can be influenced. And, CMI's legal ability to participate in NTSB investigations assures constant contact between them, which, if anything, makes real the potential of influence.

Finally, according to CMI, it is "outrageous" – simply outrageous! – for Plaintiff to suggest that the occurrence of 150 investigations per year performed jointly by the NTSB and CMI can lead to affinity between their personnel and a presumption by the NTSB, conscious or unconscious, that CMI was not at fault. Opp. at 22. CMI claims that the 150 figure is unfounded, but it comes directly from the testimony of John Kent, CMI's air safety manager. Kent Depo. 10:22-11:9 & 12:18-25, at Ex. P. Indeed, Kent signed the "Certification of Party Representative" attesting that he is CMI's liaison with the NTSB regarding this very air crash. CMI Ex. A.

## V. CMI FAILS TO REFUTE THAT ADMITTING THE NTSB'S OPINIONS ON CAUSATION WOULD SEVERELY PREJUDICE PLAINTIFF

As shown in Plaintiff's opening papers, NTSB's status as a federal agency and a perception that its personnel are disinterested specialists would give its opinions / conclusions enormous weight, if not make them dispositive. Faced with technically complex testimony by the parties' percipient and expert witnesses on the possible causes of the crankshaft fracture, it would be tempting, and natural, for jurors working hard to understand the facts to just adopt the NTSB's conclusions, or at the very least, to use them as a tie-breaker regarding which causation theory is right. That would subvert the objective of 49 U.S.C. § 1554(b) and severely prejudice Plaintiff. "Congress[] [has a] strong desire to keep the Board free of the entanglement of [civil] suits and … ensure that the Board does not exert an undue influence on litigation." 49 C.F.R. § 835.3.

CMI claims that "Plaintiff cites no legal authority for her tenuous argument that CMI had some duty to identify NTSB reports and documents in its Rule 26 disclosures." Actually, she did: F.R.C.P. Rules 26 and 37, Federal Rule of Evidence 403, and certain case authorities. Mot. at 28-29. In any case, CMI misses the point. Plaintiff is not necessarily saying that CMI should have listed NTSB personnel as its retained expert witnesses (although that would have accurately set

14

forth the state of affairs), or disclosed the Original Report or other documents containing NTSB conclusions as its "expert reports." The purpose, however, of Rules 26 and 37 is to prevent unfair surprise and allow parties to prepare for evidence and arguments that their adversaries present at trial. That purpose is subverted where, as here, introducing the Original Report, Supplemental Report, and Response would be equivalent to having "Dr. NTSB" take the stand and testify in favor of CMI's theory of causation, and against Plaintiff's theory.

Moreover, any contest between Plaintiff and the "government" would be one-sided. The potential is great that the jury will view NTSB probable cause's determinations as being dispositive. The objective of 49 U.S.C. § 1554(b) is precisely to prevent that, and yet that is what CMI proposes to do here with the Response, Supplemental Report, and other supposedly benign "factual" findings.

## VI.   CONCLUSION

For the reasons above and in her opening papers, Plaintiff respectfully requests that the Court decline to credit CMI's Opposition, and grant her Motion in Limine. Specifically, the Court is asked to exclude the NTSB Materials referred to above, including the Original Report, the Supplemental Report, and the Response. A revised [Proposed] Oder is submitted herewith to take into account the Opposition.

Dated: October 1, 2013     Respectfully submitted:
JENNIFER DAWN JONES, individually and as a Personal Representative of the Estate of ROBERT GARY JONES

By: /s/ O. Fayrell, Furr, Jr.
O. Fayrell Furr, Jr.  (Fed. ID No 915)
Attorney for Plaintiff
FURR & HENSHAW
1900 Oak Street (29577)
Myrtle Beach, S.C. 29578
(843) 626-7621 - tel; (843) 448-6445 - facsimile
fho@sc.rr.com - email

**CALLAHAN & BLAINE, APLC**

   /s/ Brian J. McCormack
DANIEL J. CALLAHAN (Cal. Bar No. 91490)
BRIAN J. McCORMACK (Cal. Bar No.167547)
D. BRYAN GARCIA (Cal. Bar No. 216904)

15

3 Hutton Centre Drive, Ninth Floor
Santa Ana, California 92707
(714) 241-4444; Fax: (714) 241-4445
bmccormack@callahan-law.com
Attorneys for Plaintiff

G:\Clients\3081\3081-02\TRIAL\MILs\MIL to Exclude NTSB Report\Reply in Supp of MIL to Exclude NTSB Report.wpd